**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAMAR ADAMS,<br>        **Plaintiff,** | CIVIL ACTION |
| **v.** | |
| KULICKE AND SOFFA INDUSTRIES,<br>INC.,<br>        **Defendant.** | NO.  24-1679 |

## <u>MEMORANDUM</u>

This matter is before the Court on the joint motion of Plaintiff Shamar Adams ("Plaintiff") and Defendant Kulicke and Soffa Industries, Inc. ("Defendant") seeking approval of their proposed settlement resolving Plaintiff's wage-and-hour claims under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") for alleged unpaid overtime and failure to track/record hours (ECF No. 16-1). The Court has carefully considered the parties' motion and, for the reasons below, denies the motion without prejudice.

### I.    Background

Plaintiff, an employee of Defendant from 2021 until March 27, 2023, brought this action in April 2024, alleging violations of the FLSA, PMWA, Title VII of the Civil Rights Act of 1964 ("Title VII"), and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"). (ECF No. 1). As to his FLSA claims, Plaintiff requests that the Court award him (1) in accordance with the FLSA, back pay wages and/or overtime wages, liquidated damages, and reasonable attorney's fees and costs to be paid by Defendant; and (2) pre- and post-judgment interest and court costs as further allowed by law. (*Id.* at 10-11). As to Plaintiff's PMWA claims, he requests that the Court award him (1) the amount of unpaid overtime compensation to which he is entitled, including

interests thereon, "and penalties subject to proof"; and (2) reasonable attorney's fees and costs pursuant to the PMWA. (*Id.* at 12). Defendant denies Plaintiff's allegations. (ECF No. 16-3 at 2).

The parties recently executed a settlement agreement (the "Agreement") resolving Plaintiff's claims for a fixed monetary amount. (*Id.*). Under the Agreement, Plaintiff will receive a sum for his alleged lost wages and for his alleged emotional distress damages. (*Id.* at 2-3).

## II.    Legal Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Employers who violate the FLSA are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *David v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting 29 U.S.C. § 216(b)).

FLSA claims can be settled either "(i) with the Department of Labor supervising the payment of unpaid minimum wages or overtime compensation under 29 U.S.C. § 216(c); or (ii) with the district court's approval of a settlement agreement under 29 U.S.C. § 216(b)." *Morales v. Unique Beginning Caterers Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 236744, at *2 (D.N.J. Dec. 10, 2021) (citing *Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599, at *2 (D.N.J. Mar. 26, 2012)). To approve a proposed FLSA settlement, "the Court must find 'that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Zheng v. NJ Great Wall, LLC*, 2023 U.S. Dist. LEXIS 106646, at *4 (D.N.J. June 20, 2023) (quoting *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)).

"In determining whether a compromise is fair and reasonable, courts in this Circuit consider both (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA." *Gabrielyan v. S.O. Rose Apts. LLC*, 2015 U.S. Dist. LEXIS 135615, at *3-4 (D.N.J. Oct. 5, 2015) (citing cases). Approval of FLSA settlements thus entails a three-part analysis: "First, the court must determine that the settlement concerns a bona fide dispute. Second, the court must determine that the settlement is fair and reasonable to the Plaintiff-employee. And, third, the court must determine that the agreement does not frustrate the implementation of the FLSA in the workplace." *Id.* at *4.

### III.    Analysis

### A.  Bona Fide Dispute

"A *bona fide* dispute exists when parties genuinely disagree about the merits of an FLSA claim – when there is factual rather than legal doubt about whether the plaintiff would succeed at trial." *Cruz v. JMC Holdings, Ltd.*, 2019 U.S. Dist. LEXIS 169071, at *10 (D.N.J. 2019) (quoting *Haley v. Bell-Mark Techs. Corp.*, 2019 U.S. Dist. LEXIS 72365, at *4 (M.D. Pa. Apr. 30, 2019)). The record here amply demonstrates a bona fide factual dispute between Plaintiff and Defendant. Plaintiff has contended that he is entitled to back pay wages and/or overtime wages, liquidated damages, and reasonable attorney's fees and costs on account of Defendant's failure "to properly pay overtime compensation" and failure "to accurately track and/or record the hours Plaintiff worked." (ECF No. 1 at 11). Defendant denies that Plaintiff is entitled to recovery because it did not violate the FLSA, PMWA, or any other law. (ECF No. 5 at 1). Notwithstanding this disagreement, the parties have reached a settlement in the interest of avoiding the risks, costs, and time spent in continued litigation. Under these facts, the Court

concludes that the Agreement resolves a bona fide dispute. *See, e.g., Vidal v. Paterson Car Emporium LLC*, 2023 U.S. Dist. LEXIS 8482, at *5 (D.N.J. Jan 18, 2023) ("In light of the stark contrast between the parties' factual positions, the Court finds that their dispute is bona fide.").

### B. Fair and Reasonable to Plaintiff

In assessing whether an FLSA settlement is fair and reasonable to a plaintiff, courts in this Circuit often invoke the following non-exhaustive list of factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). These factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *Alves v. Main*, 2012 U.S. Dist. LEXIS 171773, at *31 (D.N.J. Dec. 4, 2012) (citing *In re American Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000)). Accordingly, "the Court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness." *Id.* (citing *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006)).

The Court considers collectively the first, third, fourth, and fifth factors. As explained by the Third Circuit in *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995), the first factor is meant to encapsulate "the probable costs, in both time and money, of continued litigation," and the third factor asks courts to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id.* at 812, 813. Through the fourth factor, "[b]y evaluating the risks of establishing liability, the district court can examine

what the potential rewards (or downside) of litigation might have been had [] counsel elected to litigate the claims rather than settle them." *Id.* at 814. Similarly, the fifth factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Id.* at 816.

While the parties do not address the *Girsh* factors, these factors, as applied, favor settlement approval. The parties have reached settlement after an "investigation and research of the facts and law applicable to this case," which presumably afforded each party the opportunity to assess the strength of their claims and the risks of continuing litigation. The parties recognize that continued litigation would be risky based on the uncertainty of any outcome in the lawsuit, and irrespective of the outcome, continued litigation would certainly entail expenditure of time, costs, and energy by both sides. Accordingly, there is significant value to all parties in resolving the litigation now rather than at a later stage.

The eighth and ninth factors compel the same conclusion. These call upon courts "to determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth factor)." *In re GMC*, 55 F.3d at 806 (citing cases). These factors "are typically considered in tandem," and require the Court to "compare[] the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *In re PAR Pharm. Secs. Litig.*, 2013 U.S. Dist. LEXIS 106150, at *23 (D.N.J. July 29, 2013) (citing *In re GMC*, 55 F.3d at 806).

Here, Plaintiff does not explicitly state the amount of damages he seeks for his FLSA and PMWA claims; however, for his Title VII and Section 1981 claims, he seeks back wages, front pay, and compensatory damages — as well as punitive and/or exemplary damages — of no less

than $150,000. (ECF No. 1 at 13-14). Not accounting for attorney's fees and costs, the Agreement allocates to Plaintiff a fixed monetary sum, half of which is apportioned for his FLSA claims. While the settlement amount is significantly less than what Plaintiff seeks in his Complaint, it provides reasonable certainty to Plaintiff in light of the inherent risk of a jury trial, which is that Defendant is not found liable and Plaintiff recovers no damages.

Thus, the Court finds that the *Girsh* factors support approval of the Agreement.[1]

### C.  Implementation of the FLSA

Even if the settlement is otherwise fair and reasonable, the Court must decide whether the Agreement would impermissibly frustrate the implementation of the FLSA in the workplace. "Indicia of a compromise which runs counter to the FLSA's purpose of protecting workers include restrictive confidentiality clauses and overly broad release provisions." *Fritz v. Terminite, Inc.*, No. 19-15749, 2020 WL 5015508, at *2 (D.N.J. Aug. 25, 2020). The Agreement here contains both a confidentiality clause and a release provision.

With respect to the confidentiality clause, "district courts have rejected as unreasonable settlement agreements that contain confidentiality provisions, finding them unenforceable and operating in contravention [to] the FLSA." *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *4-5 (D.N.J. Mar. 26, 2012). By including a confidentiality clause, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right[.]" *Id.* (quoting *Dess v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242-47 (M.D. Fla. 2010)). Thus, "[t]here is a strong presumption against

---

[1] The second and sixth factors are inapplicable, as this is not a class action. Additionally, there is no evidence as to Defendant's ability to withstand a greater judgment, so the seventh factor is neutral.

confidentiality clauses in FLSA wage-settlement agreements." *Haley v. Bell-Mark Techs. Corp.*, No 17-1775, 2019 WL 1925116, at *5 (M.D. Pa., Apr. 30, 2019).

However, "[d]istrict courts within the Third Circuit have occasionally approved narrowly crafted confidentiality clauses." *Id.* at *6. In such cases, the confidentiality clauses "restricted employees only from disparaging their employers and discussing the terms of the settlement with the press and media," but the settlement agreements remained publicly accessible and employees were permitted to discuss the settlement terms with coworkers. *Id.* For instance, in *Alvarez v. BI Inc.*, No 16-2705, 2020 WL 1694294, at *9 (E.D. Pa. Apr. 6, 2020), the court approved a settlement even though a confidentiality provision barred the plaintiffs from discussing the case with the media, finding that "[i]mplementation of this clause would not frustrate the purpose of the FLSA because the clause" did not otherwise bar the plaintiffs "from discussing the lawsuit with the employees of Defendant."

In this case, the confidentiality clause prohibits Plaintiff from disclosing the terms of the Agreement with anyone other than his "spouse, attorneys, banks, accountants, and/or tax advisors, . . . who, in turn, shall be obligated to keep this information confidential." (ECF No. 18 at 4). The provision does not preclude Plaintiff, however, from "disclos[ing] to others that the matter has been resolved confidentially." (*Id.*). The Court deems it a distinction without a difference for the Agreement to bar Plaintiff from discussing the substance of the Agreement with non-privileged parties and to bar him from discussing the Agreement beyond disclosing its confidential nature. Accordingly, the Court finds that the confidentiality clause is so unduly restrictive as to frustrate the purpose of the FLSA.

The Court also rejects the general release provision of the Agreement. A court evaluating the fairness of an FLSA settlement must determine whether the "agreement is narrowly tailored

such that it resolves only the employee['s] wage and hour claims." *See Wood v. Saroj & Manju Invs. Phila., LLC*, No. 19-cv-2820, 2020 U.S. Dist. LEXIS 253960, at \*9 (E.D. Pa. May 14, 2021). When a release provision reaches beyond such claims to encompass actions against the employer on non-wage-and-hour-related grounds, courts within this Circuit will typically reject the provision as overbroad. *See Bettger v. Crossmark, Inc.*, No. 13-cv-2030, 2015 U.S. Dist. LEXIS 7213, at \*9 (M.D. Pa. Jan. 22, 2015) (finding that a release provision encompassing "any and all" claims against an employer prior to the release date was overbroad and contrary to the FLSA); *Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 659-60 (E.D. Pa. 2020) (rejecting a release provision encompassing unknown and unrelated claims on the grounds that such a provision subverts the FLSA's "goal of remedying the consequences of unequal bargaining power"); *Howard*, 197 F. Supp. at 779-80 (declining to approve a release provision on the grounds that "release of an unknown claim based on a separate statutory cause of action frustrated the fairness of the [settlement agreement]"). Additionally, the Third Circuit requires that waivers of employment discrimination claims be made "knowingly and willfully," a determination which requires "clarity and lack of ambiguity" in the language of a release. *See Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). In summary, a release provision in an FLSA settlement agreement is only acceptable if it unambiguously covers only wage-and-hour-related claims and cannot be read as a waiver of the plaintiff's right to sue on other grounds related to their employment.

In this case, the release proposed for Plaintiff provides that he will release "any and all claims, . . . known or unknown, . . . which [he] . . . may have or claim to have against K&S . . . that in any way arise out of or are connected with acts . . . that have occurred on or before the Effective Date of this Agreement." (ECF No. 18 at 2-3). The provision clarifies, however, that

"nothing in this Agreement releases any claims that Mr. Adams has rights to under the [FLSA] for events occurring after the date of this agreement or that are presently unknown to him and not raised in the Lawsuit." (*Id.* at 3). While the parties recognize in their Joint Response to the Court's April 24, 2024 Order the Court's concern about whether the release language frustrates the purpose of the FLSA, (ECF No. 18 at 2), they assert that a general release is appropriate here because their proposed revision "is narrowly tailored and is clear that Mr. Adams does not release any unknown or future FLSA claims." (*Id.* at 4).

The Court disagrees. By calling for Plaintiff's release of "any and all claims" that "in any way arise out of or are connected with acts . . . that have occurred on or before the Effective Date of this Agreement," the provision's current language could be read to bar Plaintiff from asserting any claim related to his employment with Defendant, including for his causes of action under Title VII and Section 1981. Such a broad release prevents the Court from evaluating the non-FLSA claims that Plaintiff has waived and "runs contrary to the history and policy of the FLSA." *Wahpoe v. Staffmore, LLC*, 2020 U.S. Dist. LEXIS 169314, at *18 (E.D. Pa. Sep. 16, 2020).

Accordingly, the Court declines to approve either the confidentiality clause or general release provision as drafted because they frustrate the purpose of the FLSA.

## IV.    Conclusion

Applying the rigorous scrutiny mandated by the FLSA, the Court denies the parties' joint motion without prejudice. The Court will, however, allow the parties to submit a revised settlement agreement, addressing the concerns raised herein, and a renewed joint motion. An appropriate Order follows.

**BY THE COURT:**

9

/s/ Kelley B. Hodge

_____

HODGE, KELLEY B., J.